DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>JOSE QUEVEDO SALAZAR,<br><br>    Defendant. | CRIMINAL CASE NO. 24-00011-004<br><br>**REPORT AND RECOMMENDATION**<br>re Motion to Sever Charges and<br>Motion to Dismiss (ECF No. 136) |

Pending before the court is defendant Jose Quevedo Salazar's ("Salazar's") Motion to Sever Charges and Motion to Dismiss. *See* Mot. Sever and Dismiss, ECF No. 136. Salazar argues that his defense would be unduly prejudiced if he was tried with the codefendants[1] because Counts 1-7 of the Superseding Indictment do not involve him. *Id.* at 1. Additionally, Salazar seeks dismissal of Counts 8-10 and 12-18 because said counts "do not contain any specific allegations against" him. *Id.* at 2. Having reviewed the parties' filings on the matter and based on relevant case law, the court issues this Report and Recommendation to deny the requests to sever and to dismiss but to grant Salazar's alternative request for a bill of particulars.

**I.   BACKGROUND**

    **A.   Charges**

On March 22, 2024, a Complaint was filed in MJ 24-00036 charging brothers Jonovan,

---

[1] The codefendants are Jonovan Michael Cruz ("Jonovan"), Jeremy Cruz ("Jeremy") and Eric Shaun Cruz ("Eric"). Jonovan, Jeremy and Eric are collectively referred to as the "Cruz brothers."

Jeremy and Eric each with Conspiracy to Distribute Fifty or More Grams of Methamphetamine Hydrochloride, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(viii), and Attempted Possession with Intent to Distribute Fifty or More Grams of Methamphetamine Hydrochloride, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(viii) and 18 U.S.C. § 2. *See* Compl., ECF No. 1.

On April 10, 2024, the grand jury issued an Indictment charging the three Cruz brothers with the same offenses alleged in the Complaint. *See* Indictment, ECF No. 15.

On June 5, 2024, the grand jury issued a Superseding Indictment against Salazar and the three Cruz brothers. *See* Superseding Indictment, ECF No. 60. The charges in the Superseding Indictment are summarized below:

| Count | Offense Description | Defendant(s) |
|---|---|---|
| 1 | Conspiracy to Distribute Fifty or More Grams of Methamphetamine Hydrochloride | Jonovan, Jeremy and Eric |
| 2 | Attempted Possession with Intent to Distribute Fifty or More Grams of Methamphetamine Hydrochloride | Jonovan, Jeremy and Eric |
| 3-7 | Engaging in Monetary Transactions with Proceeds of Specified Unlawful Activity | Jeremy and Eric |
| 8-13 | Engaging in Monetary Transactions with Proceeds of Specified Unlawful Activity | Jeremy, Eric and Salazar |
| 14-18 | Engaging in Monetary Transactions with Proceeds of Specified Unlawful Activity | Jonovan, Eric and Salazar |
| 19-33 | Engaging in Monetary Transactions with Proceeds of Specified Unlawful Activity | Eric and Salazar |
| 34 | Conspiracy to Engage in Monetary Transactions with Proceeds of Specified Unlawful Activity | Jonovan, Jeremy, Eric and Salazar |

The money laundering counts naming Salazar as a defendant allege that he and his codefendants engaged in financial transactions with the proceeds of specified unlawful activity, specifically, a conspiracy to distribute drugs, knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of said proceeds.

**B.    Release Conditions**

On June 6, 2024, Salazar was arrested in the Eastern District of California. He was

temporarily detained, and on June 18, 2024, that court ordered him to be released once a bed became available at Wellspace inpatient facility and to comply with all rules and regulations of the substance abuse treatment program. *See* Rule 5 Documents, ECF No. 113. On June 20, 2024, the court ordered Salazar to remain in the inpatient facility until released by the pretrial services officer and upon completion, to reside at a location approved by the Pretrial Services Office. *Id.*, Am. Special Conditions of Release, ECF No. 113-2.

On June 27, 2024, Salazar appeared by Zoom for his arraignment in this district. *See* Mins., ECF No. 75. The court ordered him released on the same conditions imposed by the Eastern District of California. *Id.*

### C.     Arrest Warrant and Detention

On July 24, 2024, the probation office filed a Petition for Action on Conditions of Release (the "Violation Petition"), stating that Salazar entered Wellspace on July 2, 2024, and thereafter terminated his participation from the program on or about July 19, 2024. *See* ECF No. 96. The probation officer requested that an arrest warrant be issued.

On July 25, 2024, the court granted the request and ordered that a warrant issue for the Salazar's arrest. *See* Order, ECF No. 98.

On September 6, 2024, Salazar appeared by video conference for a status hearing, and the court explained that an arrest warrant was pending. *See* Mins., ECF No. 114. The court ordered him to self-surrender to the marshals in the morning. *Id.*

On September 12, 2024, Salazar self-surrendered. *See* Rule 5 Documents, ECF No. 125. He appeared in the Eastern District of California on September 16, 2024, and agreed to be removed to Guam. *See* Commitment to Another District, ECF No. 125-2.

On September 30, 2024, Salazar arrived on Guam, and he appeared in court on October 8, 2024, to address the allegations in the Violation Petition. *See* Mins., ECF No. 127. Having found that Salazar violated his release conditions and that there was no condition or combination of conditions of release that will assure that he will not flee, the court ordered Salazar detained pending trial. *Id.*

Trial is presently scheduled to commence February 19, 2025. *See* Order Granting Mot.

Continue Trial and Related Dates, ECF No. 135.

On November 15, 2024, Salazar filed the instant Motion to Sever Charges and Motion to Dismiss. *See* ECF no. 136. On November 22, 2024, the United States filed an Opposition to the motion. *See* ECF No. 138. Salazar filed an Amended Reply on December 3, 2024. *See* ECF No. 144.

On November 20, 2024, the Chief Judge referred said motion to this court to determine and to issue a report and recommendation. *See* Order, ECF No. 137.

**II.    DISCUSSION**

**A.    Motion to Sever**

Salazar's motion asserts that only Count 11 and Counts 19-33 specifically mention him "with any particular detail[,]" and Count 34 only mentions him "as being part of a conspiracy generally." Mot. Sever and Dismiss at 3, ECF No. 136. Salazar argues that because he is not named in Counts 1-7, he will be unduly prejudiced if he were to be tried together with the codefendants on these counts. He claims that the jury will "hear evidence concerning allegations of drug possession and drug distribution," and the "spillover effect" of such evidence "would risk allowing the jury to impute to . . . Salazar[] guilt based on the alleged drug activities of the codefendant Cruz brothers." *Id.* at 5-6.

The United States opposes severance and asserts that although Salazar is not named in Counts 1-7, the charges in the Superseding Indictment are "inter-related." Opp'n at 5, ECF No. 138. The government contends that the charges "are connected with or parts of a common scheme or plan, here to traffic methamphetamine in Guam and to funnel the proceeds of that drug trafficking to the U.S. mainland[.]" *Id.* The United States asserts that "[t]he drug trafficking conspiracy and nearly all of the substantive money laundering transactions took place within [the] same timeframe[,]" so the United States maintains that said charges "were properly joined within the same indictment and a joint trial is appropriate." *Id.*

1.    <u>Legal Standard</u>

Rule 8 of the Federal Rules of Criminal Procedure permits joinder of defendants in the same indictment to promote judicial economy.

> The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Fed. R. Crim. P. 8(b). "There is a preference in the federal system for joint trials of defendants who are indicted together. Joint trials 'play a vital role in the criminal justice system.' They promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *Zafiro v. United States*, 506 U.S. 534, 537 (1993) (quoting *Richardson v. Marsh*, 481 U.S. 200, 209-210 (1987)).

Nevertheless, a trial judge has broad discretion to grant or deny severance of joined counts or defendants after balancing the interest in judicial economy against the risk of prejudice to the defendant or the Government. Rule 14 of the Federal Rules of Criminal Procedure provides for relief from prejudicial joinder and states that "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a).

The Supreme Court has stated that a severance is warranted "only if there is a *serious risk* that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539 (emphasis added).

The Ninth Circuit has also stated:

> The moving party must show more than that a separate trial would have given him a better chance for acquittal. He must also show violation of one of his substantive rights by reason of the joint trial: unavailability of full cross-examination, lack of opportunity to present an individual defense, denial of Sixth Amendment confrontation rights, lack of separate counsel among defendants with conflicting interests, or failure properly to instruct the jury on the admissibility of evidence as to each defendant. In other words, the prejudice must have been of such magnitude that the defendant was denied a fair trial.

*United States v. Douglas*, 780 F.2d 1472, 1478 (9th Cir. 1986) (quoting *United States v. Escalante*, 637 F.2d 1197, 1201 (9th Cir. 1980)).

The Ninth Circuit identified the following factors a court may consider in inquiring into the prejudicial effect of a joint trial:

> (1) whether the jury may reasonably be expected to collate and appraise the individual evidence against each defendant; (2) the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used; (3) whether the nature of the evidence and the legal concepts involved are within the competence of the ordinary juror; and (4) whether [a]ppellants could show, with some particularity, a risk that the joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.

*United States v. Fernandez*, 388 F.3d 1199, 1241 (9th Cir. 2004), *modified*, 425 F.3d 1248 (9th Cir. 2005). "The first two factors are the most important in this inquiry." *Id.*

###	2.	Analysis

The court's analysis begins with the four factors identified in *Fernandez*. The first factor requires the court to determine whether the jury may reasonably be expected to compartmentalize the evidence against each defendant. While Salazar is not named as a defendant in the specific money laundering acts alleged in Counts 3-7, the court notes that all four defendants are charged in Count 34 with the overarching money laundering conspiracy. The Ninth Circuit has noted that "a joint trial is particularly appropriate where the codefendants are charged with conspiracy, because the concern for judicial efficiency is less likely to be outweighed by possible prejudice to the defendants when much of the same evidence would be admissible against each of them in separate trials." *Fernandez*, 388 F.3d at 1242. Thus, with regard to Counts 3-7, it would appear that this first factor does not favor severance of trial.

Additionally, as to the individual money laundering counts, one of the essential elements the government will have to prove beyond a reasonable doubt is that each defendant knew that the property involved in the financial transactions represented the proceeds of specific, separate criminal activity. *See* Ninth Circuit Model Crim. Instr. 18.4. In this case, the Superseding Indictment alleges that the property involved in the money laundering counts were proceeds of a conspiracy to traffic drugs. Thus, despite Salazar's arguments to the contrary, *see* Am. Reply at 3-4, it would appear that evidence of the codefendant's drug activity as charged in Counts 1 and 2 are relevant and admissible as to the money laundering counts. Accordingly, the court finds that the jury can reasonably be expected to evaluate the evidence against each of the defendants independently, especially if the trial judge fashions jury instructions accordingly and is diligent in instructing the jury on the limited

purposes for which certain evidence may be used.[2]

The second factor the Ninth Circuit considers is the judge's diligence in instructing the jury on the limited purposes for which certain evidence may be used. Because the trial has not occurred yet, the court is unable to say that the trial judge has not been diligent in instructing the jury, but the court is confident that the trial court will strive to ensure that the jury is appropriately instructed, including the frequent use of limiting instructions to explain how and against whom certain evidence may be considered. This should reduce or eliminate the possibility of prejudice arising from a joint trial with the Cruz brothers.

With regard to the third factor, the Ninth Circuit asks trial court to consider the nature of the evidence and legal concepts involved in the case. Here, the Superseding Indictment essentially alleges two different conspiracies: one involving the three Cruz brothers to distribute methamphetamine hydrochloride, and another agreement involving all the defendants to engage in financial transactions involving drug proceeds in order to conceal or disguise the nature, ownership and control of the drug proceeds. The charged offenses only span a short period of time – from April to October 2023, about seven months. The elements of the offenses and the legal concepts involved in the charges are not too difficult for the jurors to understand if careful and detailed instructions are given. Thus, the third factor does not support Salazar's request for a severed trial.

Finally, the fourth factor considers whether a defendant can show, with some particularity, a risk that a joint trial would compromise a specific trial right or prevent the jury from making a reliable judgment about guilt or innocence. In this case, Salazar has not shown that a specific trial right would be compromised by a joint trial nor has he alleged that his defense is antagonistic to the codefendants. Instead, Salazar asserts that evidence regarding the codefendants' drug activities will result in a "spillover effect" that would lead the jury to convict him by association. But the Ninth Circuit has stated that "neither a better chance of acquittal in a separate trial nor the mere fact of joint trial with a more culpable defendant is sufficient in itself to require severance." *Fernandez*, 388 F.3d

---

[2] *See* Ninth Circuit Model Crim. Instr. 2.12 (Evidence for Limited Purposes), 6.10 (Activities Not Charged) and 6.13 (Separate Consideration of Multiple Counts – Multiple Defendants).

at 1241 (citing *United States v. Baker*, 10 F.3d 1374, 1388 (9th Cir. 1993)).

Salazar analogies his situation with the defendants in *United States v. Harrison*, 2021 WL 1816895 (S.D. Ohio May 6, 2021), and *United States v. Donaway*, 447 F.2d 940 (9th Cir. 1971). In *Harrison*, the indictment charged Daryl Harrison "with sixteen counts (including conspiracy to commit mail and wire fraud, wire fraud, mail fraud, and witness tampering)" and his step-father Robert Harrison was charged "with just one count of conspiracy to commit wire fraud." 2021 WL 1816895 at *2 (parentheses omitted). The government alleged that the defendants were "involved in a scheme where they made fraudulent statements to investors to acquire funds, then misused those funds for their own personal benefit." *Id.* Robert Harrison filed a motion to sever, asserting that "he was arguably only tenuously involved in this scheme[,]" that "he received no benefit from being listed on the bank accounts at issue, . . . no evidence suggests he withdrew money from the accounts for his personal use[,]" and that "he did not facilitate conversations with investors and did not communicate with them." *Id.* The defendant "maintain[ed] that his only connection to this alleged scheme was that the bank accounts at issue were in his name but controlled by his stepson, Daryl." *Id.* The court found that a joint trial would "result in unnecessary prejudice to Robert Harrison in light of the disparity of evidence and charges between him" and the codefendant. *Id.* The court further held that a joint trial "would lead to the jury hearing substantially more evidence regarding his stepson Daryl Harrison's conduct and would likely result in a spillover effect that would risk allowing the jury to impute to Robert Harrison's guilt based on the alleged misconduct of his stepson[.]" *Id.* Here, unlike *Harrison*, Salazar is charged in twenty-seven of the thirty-four counts alleged in the Superseding Indictment. As discussed above, any risk of a spillover effect is minimal since the evidence of the drug activities involved in Counts 1 and 2 are relevant to the money laundering offenses and conspiracy to commit money laundering charge in Count 34. Furthermore, the trial court's careful and frequent use of limiting instructions will reduce or eliminate the possibility of prejudice arising from a joint trial.

The *Donaway* case involved a ten-court indictment charging Donaway and eight others with interstate transmission of wagering information, transmission in aid of gambling, and conspiracy to violate the federal bribery statute. 447 F.2d at 941. The conspiracy count was dismissed as to all

but two defendants, and Donaway was convicted of the two remaining counts. *Id.* On appeal, he argued that his joinder in the indictment was improper and the district court abused its discretion in denying his motion to sever. *Id.* at 942. The scheme in *Donaway* involved "'fixed' horse races" where Donaway's codefendant Swank "was the hub in a wheel of activity" involving five horses. *Id.* Swank

> had contacts wit[h] horse owners, racetrack employees, trainers and bookmakers and acquired valuable information that made betting at the track's pari-mutuel windows much too tame for him. He bet instead through off-track bookmakers, including one Lawler[.] Swank bet so heavily that Lawler protected himself by 'laying off' or spreading all or part of the bets with other bookmakers.

*Id.* "The race involving 'Prize Candy' drew Donaway and another co-defendant into the picture. In attempting to 'lay off' Swank's bet, Lawler had telephoned Donaway in Philadelphia and the latter placed a $4,200 bet on the horse[.]" *Id.* This was Donaway's only connection to the group. *Id.* He "timely objected in a pretrial motion to being joined with eight others and asked for severance" and renewed the motion when the conspiracy count was dismissed, but the trial court denied both motions. *Id.* at 943. On appeal, the Ninth Circuit noted that the government's case in chief covered more than 2,300 pages of transcript, and less than 50 pages were relevant to Donaway. *Id.* The court stated that "[m]ost of the rest dealt with the other defendants and transactions involving the handling and 'doping' of horses, with which Donaway had no connection." *Id.* The Ninth Circuit found "it impossible to conclude on the facts here that [Donaway] was not severely prejudiced by the evidence relevant only to the co-defendants." *Id.* The Ninth Circuit held that "[d]espite the trial judge's sincere effort to keep the jury aware of the limitations in the admissibility of evidence, . . .the failure to sever as to appellant was an abuse of discretion[.]" *Id.* The court at this time cannot conclude that Salazar's involvement in the scheme to launder drug proceeds is as limited as Donaway's role in the fixed horse races. As previously stated by the court, Salazar is charged in twenty-seven of the thirty-four counts alleged in the Superseding Indictment. He is alleged to have received drug proceeds on sixteen of the thirty-one counts of money laundering. Even though Salazar is not named as a defendant in the two drug distribution counts, evidence of the drug trafficking activities of the three Cruz brothers is directly relevant to the money laundering charges. There are only two drug trafficking counts but there are thirty-two counts related to money laundering, which does not

support Salazar's argument that "[t]he majority of this case will focus on the alleged drug possession and drug conspiracy of the Cruz brothers and not . . . Salazar." Am. Reply at 2, ECF No. 144. Based on the information before it, the court finds that the fourth *Fernandez* factor does not support Salazar's request for a severance.

In light of the preference in the federal system for joint trials of defendants who are indicted together, *Zafiro*, 506 U.S., at 537, and because the four *Fernandez* factors do not support a severance of the trial, the below-signed judge recommends that Salazar's Motion to Sever Counts 1-7 be denied.

### B.   Motion to Dismiss

Salazar also moves to dismiss Counts 8-10 and Counts 12-18 against him. While the Superseding Indictment charges him with said counts, Salazar argues that the Superseding Indictment "contains no information concerning [his] involvement" in the specific transactions. Mot. Sever and Dismiss at 7, ECF No. 136. In the alternative, Salazar asks the court to order the government to provide a bill of particulars to "provide specific allegations of [his] conduct that would prove he is involved or otherwise culpable for these counts."

The United States opposes the motion and asserts that dismissal is not warranted since the Superseding Indictment contains a concise statement of the charges, including all necessary elements of the crimes charged.

#### 1.   Legal Standard

Federal Rule of Criminal Procedure 12(b)(3) governs a motion to dismiss an information or indictment for failure to state an offense. *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002). The rule specifies which motions must be made before trial and includes a motion to dismiss because the indictment or information fails to state an offense. *See* Fed. R. Crim. P. 12(b)93)(B)(v). To withstand a 12(b)(3) motion, an indictment must allege that the defendant performed acts that, if proven, would constitute a violation of the law under which he has been charged. *Boren*, 278 F.3d at 914.

Under Federal Rules of Criminal Procedure 7, an information is sufficient if it is "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed.

R. Crim. P. 7(c)(1). For the purpose of analyzing a 12(b)(3) motion, the court must accept the allegations in the indictment or information as true. *Boren* at 914. In ruling on a pretrial motion to dismiss, "the district court is bound by the four corners of the [charging document]." *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014). The court "cannot consider evidence that does not appear on the face of the indictment." *United States v. Kelly*, 874 F.3d 1037, 1046 (9th Cir. 2017) (citing *Lyle*, 742 F.3d at 436).

2. Analysis

In this case, Counts 8-10 and 12-13 of the Superseding Indictment charge Salazar, Jeremy and Eric with Engaging in Monetary Transactions with Proceeds of Specified Unlawful Activity, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), 1961(1) and 2. Similarly, Counts 14-18 of the Superseding Indictment charge Salazar, Jonovan and Eric with Engaging in Monetary Transactions with Proceeds of Specified Unlawful Activity, in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i), 1961(1) and 2. The essential elements of these counts require the United States to prove that (1) the defendant conducted a financial transaction involving property that represented the proceeds of a conspiracy to distribute methamphetamine hydrochloride; (2) the defendant knew that the property represented the proceeds of some form of unlawful activity; and (3) the defendant knew that the transaction was designed in whole or part to conceal or disguise the nature, location, source, ownership and control of the proceeds. *See* Ninth Circuit Model Crim. Instr. 18.4. (Laundering or Attempting to Launder Monetary Instruments). The Superseding Indictment contains sufficient information on its face to satisfy the requirement of Rule 7 that it be "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).

The United States notes that while the Superseding Indictment does not identify Salazar as either the sender or receiver of the funds involved in the financial transactions in said counts, the Superseding Indictment specifically cites to 18 U.S.C. § 2, which gives Salazar notice that he can be held liable as a principal for the money laundering offenses if he "aids, abets, counsels, commands, induces or procures its commission." 18 U.S.C. § 2. The court concurs and concludes that the Superseding Indictment adequately states money laundering offenses against Salazar in Counts 8-10 and Counts 12-18. Accordingly, the court recommends that Salazar's Motion to

Dismiss said counts be denied.

### 3. Alternative Request for Bill of Particulars

In the alternative to dismissal, Salazar requests the court order the government to file a bill of particulars. The Ninth Circuit has explained that a bill of particulars serves three functions: (1) to inform a defendant of the nature of the charges against him to enable him to prepare for trial; (2) to avoid or minimize the danger of surprise at trial, and (3) to protect against double jeopardy. *Id.* The test for granting of a bill of particulars is whether the indictment is so vague that a bill of particulars is required. *United States v. Giese*, 597 F.2d 1170, 1180 (9th Cir. 1979). "In determining if a bill of particulars should be ordered . . . , a court should consider whether the defendant has been advised adequately of the charges through the indictment and all other disclosures made by the government. Full discovery will obviate the need for a bill of particulars." *Long,* 706 F.2d at 1054.

In this case, the government asserts that the discovery provided to Salazar's counsel "makes it abundantly clear . . . how the[] individuals and . . . transactions [alleged in said counts] relate to . . . Salazar." Opp'n at 7, ECF No. 138. Aside from this blanket statement, the government's Opposition has not explained how Salazar aided and abetted in said transactions or where specifically in the voluminous discovery is the information regarding Salazar's relationship to these transactions so that Salazar and his counsel can meaningfully prepare for trial. The court notes that Counts 11 and 19-33 specifically identify Salazar as the recipient of the funds involved in the financial transactions and the sender is identified as one of the Cruz brothers. However, it is not clear from the face of the Superseding Indictment how Salazar's conduct relates to the financial transactions alleged in Counts 8-10 and Counts 12-18, where neither the senders or receivers of the proceeds in said counts are either Salazar or one of the Cruz brothers. Salazar asserts he "is left guessing as to his alleged involvement, if any." Am. Reply at 5, ECF No. 144.

The court agrees with Salazar. While the Superseding Indictment is sufficient to withstand a Rule 12(b)(3) motion to dismiss, the government's references to "18 U.S.C. § 2" and the "discovery provided" are insufficient to enable Salazar and his counsel to adequately prepare for trial and minimize the danger of surprise at trial. Accordingly, the court recommends that the trial judge grant Salazar's alternative request and order the United States to file a bill of particulars that either

explains how Salazar aided, abetted, counseled, commanded, induced or procured the commission of the money laundering transactions in Counts 8-10 and Counts 12-18 or references specific pages of the discovery that furnishes said information.

### III. RECOMMENDATION

The court recommends that Salazar's requests to sever charges and dismiss certain counts be denied. Because a joint trial promotes judicial efficiency and economy and will not result in unnecessary prejudice to Salazar, the court recommends that his Motion to Sever be denied. Additionally, although Salazar is not specifically identified as being the person who physically engaged in the asserted financial transaction in Counts 8-10 and Counts 12-18, he nonetheless may be held liable as an aider and abettor in said money laundering transactions as alleged in the Superseding Indictment. Accordingly, said counts of the Superseding Indictment should not be dismissed as to him. Finally, because the allegations in Counts 8-10 and Counts 12-18 of the Superseding Indictment lack sufficient detail to enable Salazar and his counsel to adequately prepare for trial and minimize the danger of surprise at trial, the court recommends that the trial judge grant Salazar's alternative request for a bill of particulars.

IT IS SO RECOMMENDED.



**/s/ Michael J. Bordallo**
**U.S. Magistrate Judge**
**Dated: Jan 07, 2025**

### NOTICE

**Failure to file written objections to this Report and Recommendation within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking such Report and Recommendation before the assigned United States District Judge. 28 U.S.C. § 636(b)(1)(B).**